UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERIE MUREL,

          *Plaintiff*,

*v.*

COMMISSIONER OF
SOCIAL SECURITY,

          *Defendant.*

_____/

CASE NO. 2:18-13610

DISTRICT JUDGE MARIANNE O. BATTANI
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (R. 10, 11)

## I.  RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (R. 10), be **DENIED**, the Commissioner's Motion for Summary Judgment, (R. 11), be **GRANTED**, and this case be **AFFIRMED**.

## II.  REPORT

### A.  Introduction and Procedural History

This is an action for judicial review of a final decision by the Commissioner of Social Security denying Plaintiff Valerie Murel's claim for Supplemental Security Income (SSI) under Title XVI, 42 U.S.C. §§ 1381-1383f. (R. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred

1

to the undersigned Magistrate Judge. (R. 3). Currently before the court are Plaintiff's and Defendant's cross-motions for summary judgment (R. 10, 11).

Plaintiff filed her application for SSI on May 5, 2016. (R. 8 at PageID.45). Her claim was denied at the initial level on September 26, 2016. (*Id.* at PageID.81). At Plaintiff's request, a hearing was held in September 2017 before Administrative Law Judge (ALJ) Crystal White-Simmons. (*Id.* at PageID.50-70). On April 27, 2018, the ALJ issued a decision finding that Plaintiff had not been under a disability since the date the application was filed.[1] (*Id.* at PageID.40-49). The Appeals Council denied her request for review. (*Id.* at PageID.26-28). This action followed. (R. 1).

### B. Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

---

[1] The ALJ indicated that Plaintiff filed her application for benefits on May 5, 2016, and used that date in coming to his decision. (R. 8 at PageID.45). The application summary in the record, however, lists the filing date as May 23, 2016. (*Id.* at PageID.169-74). Neither party seems to notice or allege error based on this discrepancy, and I cannot see how it has caused Plaintiff any harm.

to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.*

### C. Framework for Disability Determinations

Under the Social Security Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).   The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered him or her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc.*

*Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ found that Plaintiff had not been under a disability since May 5, 2016. (*Id.* at PageID.40-49). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (*Id.* at PageID.42). Next, the ALJ determined that Plaintiff had the following medically determinable impairments: spondylosis of the lumbar region without myelopathy or radiculopathy; asthma; bilateral senile cataracts; diabetes mellitus; obstructive sleep apnea; condyloma acuminate; obesity; cocaine abuse; and coronary artery disease. (*Id.*). She did not, however, have any severe impairments. (*Id.*). Thus, the ALJ found that she had not been under a disability since May 5, 2016. (*Id.* at PageID.45).

### E. Administrative Record

#### 1. Medical Evidence

I have thoroughly reviewed Plaintiff's medical record. In lieu of summarizing her medical history here, I will refer to the record as necessary in my discussion of the parties' arguments.

### 2.  Application Reports and Administrative Hearing

#### i.  Plaintiff's Function Report

Plaintiff completed a function report on July 28, 2016. (R. 8 at PageID.208-15). She explained that her ability to work was limited because she could not stand or sit long, had had heart surgery and a heart attack, could not walk a half block, and was short of breath. (*Id.* at PageID.208). On a typical day, Plaintiff woke up, made breakfast, took her medications, and went back to sleep, because her medications made her sleepy. (*Id.* at PageID.209). She often slept during the day, but sometimes found it hard to sleep at night, so she took medication to relax. (*Id.*). Some of her medications and treatments caused side effects: Lasix gave her blurred vision and headaches; Glipizide gave her an upset stomach and diarrhea; and Zocor caused itching. (*Id.* at PageID.215). Sometimes she forgot whether she had taken her medications. (*Id.* at PageID.210).

She had no issues performing personal care, including dressing, bathing, caring for her hair, shaving, feeding herself, and using the toilet, and she needed no reminders to attend to her personal needs. (*Id.* at PageID.209-10). Plaintiff spent one to two hours preparing her meals every day; sometimes she made complete meals, other times she ate frozen dinners. (*Id.* at PageID.210). The only change in her cooking habits since onset was that she could no longer eat fried foods. (*Id.*).

Plaintiff did no household chores or yard work. (*Id.*). She indicated that she needed help with lifting, household care, cleaning, and laundry. (*Id.*). She was not able to lift due to her "bad heart." (*Id.* at PageID.211).

6

Plaintiff went outside "every now and then," either using public transportation or riding in a car, as she did not have a driver's license. (*Id.*). To get to doctor appointments, she used medical transportation. (*Id.*). Every month, she spent about two to three hours shopping for food, with help. (*Id.*). She remained able to handle money, including counting change and using a checkbook. (*Id.*). Her hobby was watching television. (*Id.* at PageID.212). She sometimes talked on the phone with others, and had no problems getting along with family, friends, neighbors, or others. (*Id.* at PageID.213). But with authority figures, she would "get upset easily." (*Id.* at PageID.214).

Her impairments affected her ability to lift, bend, stand, walk, sit, and climb stairs, as well as her memory. (*Id.* at PageID.213). She explained that after walking half a block, she would have to rest, and sometimes use her inhaler. (*Id.*). She could not lift over five pounds due to her heart. (*Id.*).

To pay attention, Plaintiff had "to be into it." (*Id.*). She could follow written instructions well so long as she was wearing her glasses, but she sometimes forgot spoken instructions. (*Id.*). She did not handle stress or changes in routine well. (*Id.* at PageID.214). She had not noticed any unusual behaviors or fears. (*Id.*).

### ii.  The Administrative Hearing

#### a.  Plaintiff's Testimony

Plaintiff testified at the administrative hearing on September 29, 2017, where she was represented by attorney Adam Bastian. (R. 8 at PageID.52-66). At the time, Plaintiff was living with a friend, who paid the bills for the household. (*Id.* at PageID.54). She got around using jitneys; she did not have a driver's license due to the cost of getting a new

7

license, and she did not use public transportation. (*Id.* at PageID.55-56). The highest grade she had completed in school was ninth. (*Id.* at PageID.56). She had had some training on how to take x-rays, pull instruments, "make molds," and "take compressions." (*Id.* at PageID.57). Plaintiff's last job had been taking care of an elderly woman through Department of Community Health Home in 2007, 2007, and 2008; she had made $163, $550, and $637 in each year, respectively. (*Id.*).

Next, Plaintiff explained that she did not think she could sit to work because she was "constantly in pain" from warts. (*Id.* at PageID.58). She had had them removed with a laser when she was 18 years old, but they had returned worse than before. (*Id.*). It also hurt to stand. (*Id.*).

Further, her lower back was in a lot of pain. (*Id.* at PageID.58-59). She testified that a doctor had been giving her narcotics for her warts and back, but that at some point he told her he could no longer prescribe them. (*Id.* at PageID.59). He had not said why.[2] (*Id.*). Now she was taking a muscle relaxer, medications for her nerve pain and diabetes, and an

---

[2] The record shows that on September 18, 2016, Plaintiff saw Dr. Mariam Costandi at Henry Ford Health System. (*Id.* at PageID.393). Dr. Costandi noted that she had been taking Norco since July for her chronic back and pelvic pain caused by genital sores. (*Id.*). Plaintiff said it was the only thing that controlled the pain; she had not tried any other treatments or medications, and admitted to cocaine use to help with the pain. (*Id.*). Dr. Costandi discussed "at length" that given her cocaine use and tobacco use together, she was at risk for addiction to Norco, and she should try gabapentin instead. (*Id.*). Plaintiff "firmly declined," and said the if Dr. Costandi would not prescribe Norco, she did not want anything else. (*Id.*). Dr. Costandi consulted Plaintiff's previous primary care physician, who agreed she should not continue to receive Norco. (*Id.*). Dr. Costandi discussed "different pain control modalities" with Plaintiff and referred her to the pain clinic; Plaintiff "was dissatisfied" that the doctor did not renew her Norco prescription. (*Id.*).

aspirin regimen. (*Id.*). Memory loss was a side effect. (*Id.*). She had not had any recent hospitalizations or emergency room visits. (*Id.* at PageID.59-60).

By Plaintiff's estimate, she could lift about ten pounds, but no more, because of back pain and because bending over caused her shortness of breath. (*Id.* at PageID.60). Although a branch block had been recommended for her nerve pain, Plaintiff said she had refused because she did not want needles in her back. (*Id.*). She had also refused to go to physical therapy because she was scared. (*Id.* at PageID.60-61).

Plaintiff thought she could stand for about 15 minutes and sit for about 10. (*Id.* at PageID.61). For her warts, the gynecologist wanted to do surgery, but her cardiologist had requested she undergo stress testing before going under anesthesia. (*Id.*). She had done the stress tests on October 4. (*Id.*). To help with the pain, Plaintiff took sitz baths and applied ointment, which provided about an hour's relief. (*Id.* at PageID.61-62).

As for walking, Plaintiff could walk about a block. (*Id.* at PageID.62). She used her inhaler about once or twice a day, because she had to climb the stairs to get to her apartment. (*Id.* at PageID.63). Around the house, Plaintiff did not handle any chores except laundry, due to back pain. (*Id.* at PageID.63-64). She went grocery shopping about once a month, with the help of friends. (*Id.* at PageID.64-65).

Lastly, Plaintiff acknowledged that she had abused cocaine in the past, and had last used it a couple of days ago. (*Id.* at PageID.65-66). She used cocaine when she was in pain because she was afraid to take over-the-counter medications when she was already taking aspirin. (*Id.* at PageID.66).

### b.  The Vocational Expert's Testimony

Vocational Expert (VE) Zachary Matthews also testified. (*Id.* at PageID.66-70). The ALJ confirmed that there was no past relevant work, and posed his first hypothetical:

> [A]ssume a hypothetical individual of the claimant's age and education and with no past work. Further assume the individual is limited to . . . a medium exertional level with no climbing of ladders, ropes or scaffolds, occasional climbing of ramps and stairs, as well as occasional balancing, stooping, kneeling, crouching and crawling.

(*Id.* at PageID.67). The VE testified that the hypothetical person could work as a cleaner (135,000 jobs nationally); packer (128,000 jobs nationally); or mixer (88,000 jobs nationally). (*Id.*).

If the ALJ reduced the work level to sedentary, the hypothetical person could work as an office clerk (158,000 jobs); counter clerk (56,000); or record clerk (42,000 jobs). (*Id.* at PageID.67-68). All work would be precluded, however, for a hypothetical person who was off-task for 20 percent of the workday, or would be absent from work two or more days a month. (*Id.* at PageID.68).

### F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513 (amended March 27, 2017), 416.913 (amended March 27, 2017).[3] "Acceptable medical sources" include,

---

[3] SSR 06-03p was rescinded effective March 27, 2017, and 20 C.F.R. § 404.1513 was updated as of March 27, 2017. The new regulation is effective for cases filed on or after March 27, 2017; because Plaintiff filed for DIB in 2016, I consider her case under the old rule.

among others, licensed physicians and licensed or certified psychologists. *Id.* §§ 404.1513(a), 416.913(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* §§ 404.1513(d), 416.913(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id*. When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. §§ 404.1527 (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927 (eff. Aug. 24, 2012 to Mar. 26, 2017). Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* §§ 404.1527(d), 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. *Id.* §§ 404.1527(c) (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927(c) (eff. Aug. 24, 2012 to Mar. 26, 2017). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see*

11

*also* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule. Under that rule, certain opinions of a treating physician receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1527(d), 416.927(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

12

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

In accordance with SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Social Security Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); 16-3p, 2016 WL 1119029, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related

13

limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071) (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measure . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 16-3p, 2016 WL 1119029, at *7.

**G. Analysis**

Plaintiff's only argument is that the ALJ erred when she failed to find Plaintiff's lumbar spondylosis, coronary artery disease, obesity, diabetes mellitus, and anxiety[4] were

---

[4] Though Plaintiff includes anxiety in her list of impairments that should have been found severe, her brief neglects to mention any evidence of anxiety whatsoever. Thus, I would suggest that Plaintiff has waived this argument. **Error! Main Document Only.***McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citation and quotation omitted). Regardless, the record—which is relatively short, at under 500 pages—is sparse on

14

severe impairments in her Step Two analysis. (R. 10 at PageID.503). As Plaintiff observes, if the ALJ had found that Plaintiff had a severe impairment, 20 C.F.R. § 404.1562(b) would have directed a finding of disabled, because Plaintiff is at least 55 years old and has no more than a limited education and no past relevant work. (*Id.* at PageID.506).

The Sixth Circuit has construed the step-two severity requirement as "a *de minimis* hurdle" to "screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, at 862-63 (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985)). The claimant has the burden of demonstrating that an impairment is severe. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Plaintiff argues the ALJ's finding is not supported by substantial evidence. She points to a December 2016 lumbar spine x-ray showing degenerative facet arthropathy at multiple levels, (R. 10 at PageID.504-05) (citing R. 8 at PageID.457); "continued diagnoses" of COPD, diabetes mellitus, chronic low back pain, and coronary artery disease, (*id.*) (citing R. 8 at PageID.244, 245, 254, 273, 291, 372, 393, 394, 400); and a diagnosis of spondylosis from Henry Ford Hospital, (*id.*) (citing R. 8 at 447, 462). Further, Plaintiff

---

Plaintiff's mental health. I see only two mentions of anxiety after her application date, each consisting of no more than the word "anxiety" in notes from Dr. Patel, with no accompanying details of signs, symptoms, or treatment. (R. 8 at PageID.352, 358). No anxiety was noted in the following year's worth of medical records, though Plaintiff did report depression in May 2017. (*Id.* at PageID.416). There is no evidence in the record that Plaintiff ever took prescription medication or pursued other mental health treatment. Nor did Plaintiff mention anxiety or any limitations caused by anxiety in her function report or testimony. For those reasons, I suggest the ALJ's decision that Plaintiff's anxiety was not a severe impairment was supported by substantial evidence, and his failure to explicitly discuss any evidence of her anxiety was at most harmless error.

relies on her own testimony that her back pain and shortness of breath limited her ability to lift more than 10 pounds, (*id.* at PageID.505) (citing R. 8 at PageID.60), and a December 2016 physical examination that found tenderness in her lumbar spine, positive Patrick's sign, and lumbar facet loading, (*id.*) (citing R. 8 at PageID.451). Additionally, prior to her application date, Plaintiff's primary care physician had indicated she needed medical assistance with shopping, laundry, and housework. (*Id.*) (citing R. 8 at PageID.247). At the hearing, Plaintiff testified that she did not do housework, but could do laundry. (*Id.*) (citing R. 8 at PageID.63-64).

Defendant counters that the ALJ supported her finding of no severe impairments with substantial evidence.[5] (R. 11 at PageID.514-15). Regarding Plaintiff's diabetes, the ALJ observed that she had had a history of non-insulin dependent diabetes for more than 10 years, but had 20/20 visual acuity and healthy optic nerves with minimal diabetic retinopathy; follow-up eye examinations were unremarkable, (*id.*) (citing *id.* at PageID.316-29). *See also* (*id.* at PageID.292, 441). The ALJ did not evaluate any other diabetes symptoms, but neither does Plaintiff raise any in her brief. As of May 2017, although Plaintiff still sometimes felt symptoms of hypoglycemia, her diabetes was considered "[w]ell controlled" on medication and without insulin. (R. 8 at PageID.417).

As for Plaintiff's allegations of shortness of breath when lifting or climbing stairs, the ALJ noted that during a pulmonary function test, Plaintiff's forced vital capacity and

---

[5] In addition to the discussion summarized below, the ALJ also considered Plaintiff's alleged limitations on sitting or standing due to condyloma acuminate. (R. 8 at PageID.44). Because Plaintiff did not challenge the ALJ's finding that her condyloma acuminate was not a severe impairment, I will not dwell on this point.

forced expiratory volume improved without a bronchodilator, (R. 8 at PageID.44) (citing *id.* at PageID.366), and that Plaintiff had recently denied shortness of breath and wheezing, (*id.*) (citing *id.* at PageID.431); *see also* (*id.* at PageID.373, 448, 480); *cf.* (*id.* at PageID.245, 253, 257, 272, 293, 294, 299, 301, 377).

Turning to Plaintiff's lower back pain, the ALJ acknowledged the x-ray showing "mild" degenerative changes, (*id.*) (citing *id.* at PageID.457), and the December 2016 physical examination results described above, but also noted the examination showed negative straight leg raises, full strength in all extremities, normal gait, and a normal range of motion. (*id.*) (citing *id.* at PageID.451). Further, Plaintiff had not pursued physical therapy as recommended. (R. 8 at PageID.45) (referring to *id.* at PageID.453).

Instructive is *Higgs v. Bowen*, 880 F.2d 860 (6th Cir. 1988), which the Sixth Circuit found presented the "exceptional 'totally groundless' claim." There, the record was devoid of objective medical evidence showing a significant heart problem or hypertension before the cutoff date, and showed only mild arthritis and "slight" spinal degeneration, with no reports that either caused functional limitations or descriptions of her pain. *Id.* at PageID.863. The lone doctor's opinion was not backed by objective clinical findings. *Id.*

Like in *Higgs*, Plaintiff relies on imaging that showed only mild anterior wedging of T11 and mild degenerative changes. (R. 8 at PageID.457). And like in *Higgs*, the physician's opinion on which Plaintiff relies leaves much to be desired. Plaintiff mentions Dr. Patel's December 2015 note that she needed medical assistance with shopping, laundry, and housework. (R. 10 at PageID.505) (citing R. 8 at PageID.246-47). That opinion was on a form for the State of Michigan's Department of Health and Human Services, where

17

Dr. Patel stated that Plaintiff's diagnoses included diabetes mellitus, hip pains, dyspnea, COPD, hypolipidemia, vaginal warts, nervousness and anxiety, and chronic pain. (R. 8 at PageID.246). He checked that Plaintiff had a medical need for assistance with some personal care activities, and made a loose circle encompassing shopping, laundry, housework, and possibly meal preparation. (*Id.* at PageID.247).

I agree with Defendant that Dr. Patel's opinion is patently deficient, and any error in not considering it or granting it weight was harmless. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) ("Even if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error" because the check-box opinion was patently deficient); *Bragg v. Comm'r of Soc. Sec.*, No. 11-10579, 2012 WL 1079942, at *10 (E.D. Mich. Jan. 24, 2012) (finding harmless where ALJ failed to explicitly consider patently deficient opinion by physician who "merely checked boxes," provided one-word answers, and "offered no objective evidence on how she came to her conclusions"), *Rep. & Rec. adopted*, 2012 WL 1079925 (E.D. Mich. Mar. 30, 2012).

Further, I find unpersuasive Plaintiff's reliance on "continued diagnoses" of COPD, diabetes mellitus, chronic low back pain, and coronary artery disease, (*id.*) (citing R. 8 at PageID.244, 245, 254, 273, 291, 372, 393, 394, 400); and a diagnosis of spondylosis from Henry Ford Hospital, (*id.*) (citing R. 8 at 447, 462). A "mere diagnosis . . . , of course, says nothing about the severity of the condition." *Higgs*, 880 F.2d at 863.

Lastly, though Plaintiff says the ALJ "erred by failing to consider . . . Plaintiff's subjective complaints," (R. 10 at PageID.503), she does not explain why the ALJ's credibility assessment should be overturned. Determinations regarding a claimant's reports

18

of her own symptoms rest with the ALJ, and courts owe "great weight and deference" to that determination. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. Oct. 24, 2005) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). An ALJ's credibility determination should generally be disturbed "only for a compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. Jan. 19, 2011). Plaintiff has not offered any reason here, let alone a compelling one. Rather, the ALJ properly explained that she found Plaintiff's statements about her symptoms inconsistent "because the medical evidence demonstrates the claimant's impairments are controlled and do not cause more than a minimal effect on her ability to perform basic work activities," and because Plaintiff "has treated with conservative treatment options and sought limited continued treatment." (R. 8 at PageID.45).

In the end, if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). I suggest the ALJ's finding that Plaintiff had no severe impairments is supported by substantial evidence.

**H. Conclusion**

For the reasons stated above, I suggest that substantial evidence supports the Commissioner's decision, and I therefore **RECOMMEND** that Plaintiff's Motion for Summary Judgment, (R. 10), be **DENIED**, the Commissioner's Motion for Summary Judgment, (R. 11), be **GRANTED**, and this case be **AFFIRMED.**

III. __REVIEW__

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 16, 2019                    S/ PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge


## **CERTIFICATION**

    I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: August 16, 2019                     By s/Kristen Castaneda
                                          Case Manager